**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRIAN COURTNEY,

     *Plaintiff*,

*v.*

PRISON HEALTH SERVICES,
*et al.*,

     *Defendants.*

_____/

CASE NO. 10-CV-14123

DISTRICT JUDGE MARK A. GOLDSMITH
MAGISTRATE JUDGE CHARLES E. BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**
**OR TEMPORARY RESTRAINING ORDER**
(Doc. 16)

I.    **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's motion be

**DENIED**.

II.    **REPORT**

    A.    **Introduction**

By order of U.S. District Judge Mark A. Goldsmith, this prisoner civil rights action was

referred to the undersigned magistrate judge for general case management pursuant to 28 U.S.C.

§ 636(b). (Doc. 9.) Plaintiff Brian Courtney's *pro se* complaint alleges that his Eighth Amendment

right to not have his serious medical needs met with deliberate indifference has been violated.

Before the Court is Plaintiff's motion for injunctive relief.  Defendants Squires and Ingraham filed

a response in opposition to the motion. (Doc. 21.) The motion is therefore ready for report and recommendation.

**B.     Background**

Plaintiff states that he is seeking a preliminary injunction "to prevent [Defendants] from destroying evidence, tampering with his medical record, etc., and place him under the medical care of an outside hospital and doctors for treatment." (Doc. 16 at 1.) Plaintiff asserts that when Prison Health Services ("PHS") took over from Correctional Medical Services as the contractor for inmate medical care in Michigan prisons, "his previous treatment and scheduled tests were stopped, appointments for treatment and surgery were denied, medications were denied, etc." (*Id.* at 1-2.) Plaintiff also claims that Defendants "are attempting to erase or cover up the fact as to records are [sic] being tampered with, ultimately erasing what happened to him from his inaccessible electronic medical records, which would be evidence corroborating his claim at trial." (*Id.* at 4.)

Defendants respond in opposition to the motion, asserting that Plaintiff has received extensive medical care, that falls far short of deliberate indifference and therefore no preliminary injunction is warranted. In support of their position, Defendant Dr. Harriet Squier has provided an 11-page affidavit specifically responding to each of Plaintiff's medical claims. (Doc. 21 at Ex. A.)

**C.     Motion Standards & Governing Law**

Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to preserve the relative positions of the parties until further proceedings on the merits can be held. Whether to grant such relief is a matter within the discretion of the district court. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The

same factors are considered in determining whether to grant a request for either a temporary restraining order or a preliminary injunction. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Those factors are: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Certified Restoration*, 511 F.3d at 542. Courts have long held that "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

Preliminary injunctive relief is an extraordinary remedy that should be granted only if the movant carries his burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *Kendrick v. Bland*, 740 F.2d 432, 438, n.3 (6th Cir. l984). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97,104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). "[M]edical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference," *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843–44 (6th Cir. 2002) (internal

quotation marks and citation omitted), but not every claim of inadequate medical treatment qualifies as an Eighth Amendment violation. *Estelle*, 429 U.S. at 105. The Supreme Court has explained that

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Deliberate indifference occurs when a prison official: (1) subjectively perceives facts from which can be inferred a substantial risk to a prisoner's health or safety, (2) draws that inference, and (3) then disregards that risk. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical treatment, however, are insufficient to state an Eighth Amendment claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995).

### D.    Analysis & Conclusion

### 1.    Injunction Instructing Defendants Not to Destroy Evidence or Tamper with Medical Records

Plaintiff seeks a preliminary injunction "to prevent [Defendants] from destroying evidence [and] tampering with his medical record . . . ." (Doc. 16 at 1.) Plaintiff claims that on November 3, 2010, after he filed this lawsuit, "a Respondent at (JCF) accessed Movant [sic] medical files at 4:30 a.m. and altered information." (Doc. 16 at 10.) He claims that "no corrective actions was [sic] taken; instead, it was decided to delete it." (*Id.*)

Defendants acknowledge that on November 3, 2010, entries that referred to another patient's medical care that were mistakenly placed in Plaintiff's electronic records file were

4

removed. (Doc. 21, Ex. A ¶ 8.) Defendants assert that "just because one entry was entered on Plaintiff's chart by mistake does not support the proposition that there has been purposeful conduct to alter Plaintiff's medical records to his disadvantage." (Doc. 21 at 1.)

I suggest that Plaintiff's request be denied because injunctions ordering parties to obey the law are void.  A preliminary injunction is a drastic remedy used primarily for maintaining the status quo of the parties. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981). Courts have consistently held that an injunction that merely instructs a party to "obey the law" is null and void. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) (holding that an injunction which prohibited municipality from discriminating on the basis of race would do "no more than instruct the defendant to 'obey the law,'" and therefore was invalid); *Equal Emp't Oppor. Comm'n v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984) ("'[s]uch "obey the law" injunctions cannot be sustained'") (quoting *Payne v. Travenol Laboratories, Inc.,* 565 F.2d 895, 897-98 (5th Cir. 1978)).

In this case, Plaintiff wants the Court to enjoin Defendants from destroying and tampering with evidence – i.e., his medical records. This would be nothing more than an injunction ordering Defendants to "obey the law," because federal evidentiary rules already impose on Defendants the duty to preserve evidence relative to Plaintiff's claims, and "a district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir. 2009). Therefore, I suggest that Plaintiff's request be denied.

    **2.**    **Injunction Instructing Defendants to Provide Plaintiff with Medical Care by and Outside Hospital or Doctor**

The other relief Plaintiff seeks is an injunction requiring Defendants to "place him under the medical care of an outside hospital and doctors for treatment." (Doc. 16 at 1.) In support of this request, Plaintiff restates many of the allegations raised in his complaint. He alleges that Defendants "were repeatedly informed of [his] heart attacks, arrythmias, swelling limbs, bleeding, and pain, etc., by their own concerned staff, but continuously ignored it and denied care and prevented others from giving care." (Doc. 16 at 6.)

Defendant Dr. Squier has responded to Plaintiff's allegations in an affidavit. With regard to Plaintiff's back pain, she states that Plaintiff was given an MRI of his cervical spine in August 2008, which showed a ruptured disk. (Squier Aff., Doc. 21, Ex. A ¶ 2.) Plaintiff's treatment has included pain medication, instructions in proper exercise and stretching, and a referral to the Pain Management Committee. (*Id.*) Plaintiff's request for epidural steroid injections was denied because "[m]edical research shows that epidural steroid blocks do not provide any long term benefits for pain relief . . . ." (*Id.*)

Dr. Squier avers that Plaintiff's statement that he has had "heart attacks" is not supported by his medical records. She states that he "had tachycardia in the fall of 2009, with two emergency room visits." (*Id.* ¶ 3.) Multiple EKGs and lab tests were negative for heart attack, and "the tachycardia resolved with the use of a beta blocker and did not return when the beta blocker was stopped." (*Id.*)

Dr. Squier states that Plaintiff's allegations of swelling limbs and years of internal bleeding are not supported by his medical records. (*Id.* ¶ 7.) The doctor avers that in September 2009 Plaintiff reported that he was "vomiting one cup of blood every other week," but the vomiting was

"never witnessed; he had no drop in his hemoglobin; and had no physical abnormalities." (*Id.*) Dr. Squier goes on to aver:

> Later, he admitted he had only vomited blood once and passed blood once in five years. Positive blood testing on stool cards in the summer of 2010 resolved with the discontinuation of his non-steroidal anti-inflammatory medications, which are well known to cause gastric irritation. A July 26, 2010, referral request for a colonoscopy was evaluated by me and I declined this and gave an Alternative Treatment Plan ("ATP"). Generally, in a 42 year old patient, colon cancer is extremely rare and colonoscopy would be indicated mainly for evaluation of bleeding sufficient to cause anemia. Plaintiff has never had anemia and was taking medication known to cause GI bleeding. Even microscopic amounts of blood can cause a positive reading. The ATP asked the provider to examine for hemorrhoids (the most common cause of positive stool samples in this age group), assure compliance with taking Prilosec, and stop NSAIDs. After these were done, the patient's stool cards were negative for blood.

(*Id.* ¶ 7.)

Finally, Dr. Squier responds to Plaintiff's claim that he has been given the "experimental" drug Pamelor by explaining:

> Pamelor is used as a standard treatment for pain management within and outside of the prison system. It has been in existence for treatment of depression and anxiety for decades. When taking his maximum dose of 75 mg of Pamelor from August 14, 2009, to September 13, 2009, Plaintiff had no medical visits or kites and no apparent side effects. Only after he decreased the dose on his own and then stopped taking it did be begin having tachycardia. Of note, he has been treated by psychology on a long term basis for PTSD and anxiety.

(*Id.* ¶ 11.)

Courts have consistently denied prisoners' requests for preliminary injunctive relief where their claims were based on their disagreement with the adequacy of treatment they received at the prison. *See Kennedy v. Potter*, 344 Fed. App'x 987 (5th Cir. 2009) (affirming the denial of a preliminary injunction because prisoner's demand for the services of an outside neurosurgeon was a disagreement over the next steps I his medical treatment but did not establish deliberate

indifference); *White v. Goff*, No. 09-3118, 2009 WL 3182972 (10th Cir. October 6, 2009) (denying preliminary injunction where the prisoner received medical treatment from the prison, but merely disagreed with the course of his treatment); *Carney v. Treadeau*, No. 07-00083, 2008 WL 4283518, at *2 (W.D. Mich., Sept.11, 2008) (denying preliminary injunction where prisoner sought different medical treatment but failed to establish probable success on the merits).

Here, the record shows that Plaintiff has received extensive medical care, including multiple hospital visits and an MRI. Plaintiff clearly disagrees with the course of treatment being provided. However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Furthermore, even if Plaintiff is correct that his medical needs could have been better addressed with a different course of treatment, that does not equate to proving deliberate indifference. *See Ronayne v. Ficano*, No. 98-1135, 1999 WL 183479, at *3 (6th Cir. March 15, 1999) ("The fact that alternative procedures might have better addressed [a prisoner's] particular needs does not show that the defendants were deliberately indifferent to his medical needs.").

Accordingly, because of Plaintiff's low likelihood of success on the merits of his claims, I suggest that the remaining factors need not be addressed and Plaintiff's motion for the Court to issue an injunction ordering Defendants to "place him under the medical care of an outside hospital and doctors for treatment" be denied.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  FED. R. CIV. P. 72(b)(2).  *See also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

s/ Charles E. Binder

CHARLES E. BINDER

Dated: February 28, 2011                United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Ronald Chapman, Kimberley Koester and Thomas Leonard; served by first class mail on Brian Courtney, #444293, Lakeland Correctional Facility, 141 First St., Coldwater, MI, 49036-8600; and served on District Judge Goldsmith in the traditional manner.

Date:  February 28, 2011          By   s/Jean L. Broucek
                                       Case Manager to Magistrate Judge Binder