UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN COURTNEY,

    *Plaintiff*,

CASE NO. 10-CV-14123

v.

DISTRICT JUDGE MARK A. GOLDSMITH
MAGISTRATE JUDGE CHARLES BINDER

RAYMOND INGRAHAM, *N.P.*;
HARRIET SQUIER, *Doctor*;

    *Defendants*.[1]

                          /

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(Doc. 78)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED** and the case dismissed in its entirety with prejudice.

## II. REPORT

### A. Introduction

This *pro se* prisoner civil rights case brought under 42 U.S.C. § 1983 was filed on October 14, 2010. The case was referred on November 10, 2010, by United States District Judge Mark A. Goldsmith to the undersigned magistrate judge for pretrial case management pursuant to 28 U.S.C. § 636(b). (Doc. 9.) After granting a motion to dismiss on behalf of several defendants, the Court granted Plaintiff leave to file an amended complaint. (Doc. 70.) Plaintiff filed his amended

---

[1] Defendants Patricia Caruso, Michigan Department of Corrections, Debra L. Scutt, Larry McMillan, Cindy L. Murphy, and Karen R. Hamblin were terminated from the case on September 2, 2011. (Doc. 65.) Defendants Prison Health Services, Vemuri Padamja, Vernon Stevenson, Dr. Squires, John Does (Pain Management, PHS and MDOC employees), and Jane Doe were terminated from the case on February 13, 2012. (Doc. 71.)

complaint on February 13, 2012. (Doc. 71.) The events giving rise to the complaint occurred while Plaintiff was incarcerated at the Cotton Correctional Facility in Jackson, Michigan, and the Lakeland Correctional Facility in Coldwater, Michigan. The remaining defendants – Squier and Ingraham – filed the instant motion for summary judgment on April 30, 2012. (Doc. 78.) Plaintiff responded on May 24, 2012 (Doc. 79), and filed an affidavit in support of his response on July 2, 2012. (Doc. 82.) Defendants' replied on June 7, 2012. (Doc. 80.) Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), the motion is ready for Report and Recommendation without oral argument.

### B. Plaintiff's Amended Complaint

Plaintiff alleges that on September 18, 2009, he "suffered a heart condition medical problem and was seen in the Cotton Facility's health care department by a physician's assistant who indicated that Plaintiff needed immediate hospitalization." (Amend. Compl., Doc. 71 ¶ 7.) However, "Plaintiff was not sent to the outside hospital facility at this time by Defendants Murphy and Hamblin." (*Id.*) Later that evening, "Plaintiff was having severe chest pain and was seen in the health care department by Nurses, Defendant Hamblin and Murphy for approximately 15 minutes in time duration." (*Id.* ¶ 8.)

> Hamblin and Murphy called another facility where they spoke to a doctor who advised them to give Plaintiff 'nitroglycerin" [and] wait five minutes. This did not cure the problem and the Nurses were instructed by a medical doctor to send Plaintiff to an outside hospital for immediate medical treatment.
>
> Defendant, Nurse Hamblin, contacted Doctor Edelman, who instructed her to give Plaintiff medication to relieve the chest pressure. When this did not relieve the chest pressure, Dr. Edelman advised Hamblin to send Plaintiff to the Allegiance Emergency Room.
> Defendant, Nurse Murphy, told Plaintiff that he was not going to the hospital when he first arrived at health care complaining about loosing [sic] consciousness. She

> ordered him to go back to his housing unit, with a heart beat rate of 165 beats per minute, and he would be seen the following day by a doctor.
>
> Defendants, Nurses Murphy and Hamblin, during the second visit by Plaintiff, would no do the correct paperwork for Plaintiff to be taken to the hospital and delayed this hospital trip for over an hour to get to the hospital from 9:20 P.M. until he arrived at 10:32 p.m.
>
> Plaintiff arrived at the facility's control center to be taken out to the hospital. At 21:00 p.m. both Nurses Hamblin and Murphy walked passed [sic] him waiting. They had instructed the control center officers that there was no hurry in getting Plaintiff to the outside hospital.
>
> Plaintiff arrived at the Emergency Room at approximately 10:32 p.m. and because Defendants Hamblin and Murphy had not forwarded the proper papers, the ER had no idea of why Plaintiff was there. After over one hour Plaintiff was finally seen by the emergency doctor for his initial chest pain complaint at 9:20 p.m.

(*Id.* ¶¶ 9-14.) Plaintiff avers that he was "diagnosed at the emergency room as having heart palpitations" but the "cause of the chest pain" remained unknown at the time of his release at 2:52 a.m. (*Id.* ¶ 15.) Plaintiff adds that although his release came with "instructions to arrange for follow up care at the facility[,]" that "never occurred." (*Id.*) Plaintiff further avers that on September 23, 2009, Plaintiff was again sent to an outside hospital "for his heart condition rate which was 117 beats per minute" and that he "learned that [he] had suffered a heart attack a week previously." (*Id.* ¶ 16.) Plaintiff adds that "[n]o follow up care was ever provided" at the "Cotton Facility" other than he was "given a bottle of 'Nitro' to carry on his person." (*Id.*)

After having been transferred to the Lakeland Correctional Facility on April 12, 2010, Plaintiff avers that he continued to experience and complain about his medical problems. (*Id.* ¶ 17.) On May 10, 2010, Plaintiff was seen by Defendant Dr. Ingraham who Plaintiff avers did not inquire about his heart issues and who "discontinued several medications without reviewing

3

Plaintiff's files" and "diagnosed Plaintiff as having 'abdominal hernia'" which Plaintiff contends is a "medical falsity." (*Id.* ¶ 18.)

> On July 28, 2010, Plaintiff was called to health care and was seen by Doctor Syed Sohail. At this meeting, Plaintiff was informed that Doctor Squier's letter indicated to seek alternate treatment for Plaintiff and how to do the least treatment as possible, such as, despising [sic] certain medications already prescribed for his medical ailments, rather than conduct tests for the bleeding in his stomach, which to date has worsened. (RUO Robb unit Officer can verify observation of the Plaintiff's bleeding).
>
> Defendant, Dr. Squier, has never provided, or approved any treatment for Plaintiff's heart condition which was noted by both Allegiance Hospital, and Dwayne L. Waters, where a doctor indicated he had a heart attack one week previously. (The DLW medical records are within the MDOC's medical record department and will be made available for review).
>
> Doctor Squier has not inquired into facts necessary to make a sound medical judgment regarding treatment for Plaintiff, although she noted in Plaintiff's medical files that some improper information was listed, causing incorrect information to be relied upon by reviewing doctors, regarding the heart attack on September 18, 2009, which has yet to be addressed, treated, or evaluated by a qualified heart specialist.

(*Id.* ¶¶ 19-21.) Plaintiff attached an affidavit in support of his Amended Complaint which parallels the averments. (*Id.* at 11-12.)

Plaintiff contends that the above recitation constitutes: (1) deliberate indifference to serious medical needs (Defendant Murphy); (2) conspiracy to deprive Plaintiff of his constitutional right to receive medical treatment under 42 U.S.C. §§ 1983 and 1985 (Defendant Murphy); (3) a delay in treatment (Defendant Murphy); (4) deliberate indifference (Defendant Hamblin); (5) conspiracy to deprive Plaintiff of his constitutional right to receive adequate medical treatment when she conspired with Defendant Murphy to delay the process to send Plaintiff to an outside hospital under 42 U.S.C. §§ 1983 and 1985 (Defendant Hamblin?); (6) deliberate indifference to Plaintiff's medical needs when he discontinued his medication without an inquiry (Defendant Ingraham); (7)

4

mis-diagnosis which caused and unwarranted medical ailment which worsened his already existing medical problems (Defendant Ingraham); (8) failure to treat Plaintiff's heart condition in violation of 42 U.S.C. § 1983 (Defendant Ingraham); (9) deliberate indifference to serious medical needs when she failed to treat Plaintiff's stomach bleeding and failed to properly diagnose him (Defendant Squier); (10) criminal recklessness and conspiracy for failing to treat Plaintiff's stomach bleeding in violation of 42 U.S.C. §§ 1983 and 1985 (Defendant Squier). (*Id*. at 6-8.) Plaintiff seeks monetary and punitive damages "in an amount exceeding Ten Thousand Dollars[.]" (*Id*. at 10.)

Plaintiff's claims may be summarized as claims for deliberate indifference to serious medical needs in violation of the Eighth Amendment and conspiracy to so violate his rights under 42 U.S.C. §§ 1983 and 1985.

### C.     Motion Standards

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, and will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S.

5

at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

The non-moving party has an obligation to respond to the motion and present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 191 L. Ed. 2d 202 (1986).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

**D.     Analysis and Conclusions**

Plaintiff's claims are brought under the Eighth Amendment's provision that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend VIII. This amendment requires that convicted prisoners be provided "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). However, liability exists "only if [the defendant] knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847.

In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the staff, the inmate has failed to state a claim under the Eighth Amendment. *See Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); *McFarland v. Austin*, 196 Fed. App'x 410, 411 (6th Cir. 2006) ("as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs.*, 94 Fed. App'x 262 (6th Cir. 2004) (where the essence of plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment, dismissal of complaint for failure to state a claim was affirmed); *Selby v. Martin*, 84 Fed. App'x 496, 499 (6th Cir. 2003) ("[T]he record reveals that [plaintiff] not only received a medical evaluation by a nurse and a physician, he also received instructions with regard to daily care of his abrasions. Thus, the record clearly reveals a competent and conscientious course of medical treatment, and [plaintiff's] dissatisfaction with his treatment does not state a claim under the Eighth Amendment").

In the instant case, Plaintiff's averments indicate that he received medical treatment for his heart and stomach issues. He complains that he should have been given more treatment in a quicker fashion. I note that Plaintiff has not alleged any permanent injury or damage due to the alleged failure of Defendants to provide the speedy testing, diagnosis and treatment Plaintiff desired.

Defendants include affidavits in support of their motion for summary judgment setting forth a chronology of medical observations, testing and treatment provided during the relevant time period alleged in Plaintiff's Amended Complaint. (Doc. 78, Exs. A and B.) As to the bleeding allegations, Defendants indicate that Plaintiff admitted to Dr. Squier that he had only vomited blood once and passed blood once in five years and that, according to multiple tests, there was no evidence of any substantial loss of blood since Plaintiff's hemoglobin levels were consistently within a normal range. (Doc. 78 at Ex. B.) In addition, Plaintiff underwent a colonoscopy and endoscopy in December 2010. (*Id.*) As to Plaintiff's heart issues, Defendant Squier has sworn in her affidavit that there is no medical evidence that Plaintiff ever suffered a heart attack. (Doc. 78 at 12, Ex. B.) When Plaintiff did suffer from tachycardia in the fall of 2009, he was taken to the emergency room twice, given EKG testing which did not reveal any evidence of a heart attack, and he was given beta blockers which resolved the tachycardia until Plaintiff voluntarily reduced the dosage. (*Id.*)

As to Plaintiff's hernia, Defendant Ingraham diagnosed him in May 2010; however, Drs. Sohail and Sudhir did not find any evidence of a hernia sometime later. (Doc. 78 at 13, Ex. A.) Defendant Ingraham attests in his affidavit that he did not intentionally "overdiagnose" Plaintiff. (*Id.*)

Plaintiff contends in his affidavit in opposition to Defendants' reply that the "fact that Defendant Ingraham did misdiagnose Plaintiff is the indifference whether he had a reason to do it or not, he did it." (Doc. 82 at 3.) Plaintiff responds to Defendants' assertion that no harm has yet to have resulted from the misdiagnosis by stating that this "has yet to be seen" because of Plaintiff's "ongoing problems[.]" (Doc. 82 at 4.)

8

Plaintiff misunderstands the applicable standards which require more than malpractice or misdiagnosis. Instead, Plaintiff must aver that the defendant knew of a substantial risk of serious harm that he chose to disregard. *Farmer,* 511 U.S. at 847. Here, Plaintiff has not averred that he has suffered any harm from the alleged malpractice. This lack of harm vitiates any claim that any substantial risk of serious harm ever existed. Even if such a risk existed, Plaintiff has not asserted any disregard for his condition. Even using Plaintiff's averments alone, without reference to the affidavits in support of Defendants' motion, Plaintiff indicates that he was seen by medical staff, treated by medical staff, prescribed medication, taken to outside medical facilities, and provided with treatment there. (Doc. 71.)

Accordingly, I suggest that, based upon the applicable law, the facts viewed in the light most favorable to Plaintiff do not show that a constitutional violation has occurred and therefore Defendants' motion for summary judgment should be granted.[2] *See Estate of Henson v. Krajca*, 440 Fed. App'x 341, 346-47 (5th Cir. 2011) ("Nurse Krajca's failure to order Henson's transport to the hospital immediately after receiving notice of his elevated vital signs is in the category of malpractice, not deliberate indifference."); *Scholefield v. Riverview Psychiatric Center*, No. 8-391-B-W, 2009 WL 1605398, at *2 (D. Me. June 5, 2009) (dismissing Eighth Amendment claim as mere medical malpractice claim where the plaintiff complained of bleeding and pain in his stomach and rectal area, diagnostic testing was done, and the bleeding continued); *Strickland v. Williams*, No. 4:08CV3081, 2009 WL 877671, at *5 (D. Neb. Mar. 30, 2009) (although he plaintiff believed he should have been hospitalized sooner, where he was treated at various times during the time he complained of bleeding from the stomach, he failed to state an Eighth Amendment claim);

---

[2]Although Plaintiff contends factual issues exist, I suggest that those issues are not material and do not prevent the granting of Defendants' motion.

9

*Rosenblum v. Akanne*, No. 2:07-cv-01176-PMP-GWF, 2009 WL 63771, at *4 (E.D. Ca. Jan. 8, 2009) (dismissing complaint for failure to state a claim under the Eighth Amendment where plaintiff alleged that defendants failed to test, diagnose, and send him to a cardiac specialist despite his heart palpitations, increased hear rate, irregular beats, and claim that chest pain caused irreparable damage to his heart where plaintiff was examined by defendants on several occasions in an attempt to treat his medical condition).

### E. Conclusion

For the reasons stated above, I suggest that the motion for summary judgment be granted.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the

objections a party may have to this Report and Recommendation. *McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
CHARLES E. BINDER
Dated: August 6, 2012                              United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System and served on the following non-ECF participant via the United States Postal Service: Brian Courtney #444293, Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036.

Date: August 6, 2012        By    s/Patricia T. Morris
                                  Law Clerk to Magistrate Judge Binder

11