UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN COURTNEY,

    *Plaintiff*,

CASE NO. 10-CV-14123

v.

DISTRICT JUDGE MARK A. GOLDSMITH
MAGISTRATE JUDGE CHARLES BINDER

CINDY L. MURPHY, *Nurse*; and
KAREN R. HAMBLIN, *Nurse*,

    *Defendants*.[1]

                                        /

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
PURSUANT TO 28 U.S.C. §§ 1915A(b), 1915e(2)(B), & 42 U.S.C. § 1997e(c)(1)**

### I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the case be *sua sponte* **DISMISSED** with prejudice.

### II.     REPORT

#### A.     Introduction

This *pro se* prisoner civil rights case brought under 42 U.S.C. § 1983 was filed on October 14, 2010. The case was referred on November 10, 2010, by United States District Judge Mark A. Goldsmith to the undersigned magistrate judge for pretrial case management pursuant to 28 U.S.C. § 636(b). (Doc. 9.) Plaintiff was permitted to file an amended complaint on February 13, 2012. (Doc. 71.) Following the grant of several motions, the remaining defendants are Murphy and Hamblin. (Doc. 85.) The events giving rise to the complaint occurred while Plaintiff was

---

[1] All other defendants were terminated by previous orders of the court.

incarcerated at the Cotton Correctional Facility in Jackson, Michigan, and the Lakeland Correctional Facility in Coldwater, Michigan.

Plaintiff's application to proceed without prepayment of fees was granted pursuant to the *in forma pauperis* statute, 28 U.S.C. § 1915(a)(1), and therefore the case is subject to the screening provisions of 28 U.S.C. § 1915(e)(2)(B). After screening the amended complaint's allegations against Defendants Murphy and Hamblin, I find the case ready for report and recommendation.

**B.     Screening Procedure & Governing Law**

This case is subject to screening under several provisions of the United State Code. Pursuant to 28 U.S.C. § 1915A, 28 U.S.C. § 1915(e), and 42 U.S.C. § 1997e(c)(1), the Court is to *sua sponte* dismiss the case if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Screening may be done at any time and may be done more than once throughout the pendency of an action. 28 U.S.C. § 1915(e)(2) (court may dismiss a case "at any time" if it determines the complaint fails to state a claim); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997)[2](§ 1915(e)(2) remains applicable throughout the litigation process). In addition, when a Plaintiff is permitted to file an amended complaint, screening of the amended complaint should be conducted. *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 773 (E.D. Mich. 2009).

When the court screens a complaint where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92

---

[2]*McGore* was abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989). A complaint must be dismissed for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

A civil rights action under 42 U.S.C. § 1983 consists of two elements: (1) the defendant acted under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

### C. Plaintiff's Amended Complaint

Plaintiff alleges that on September 18, 2009, he "suffered a heart condition medical problem and was seen in the Cotton Facility's health care department by a physician's assistant who indicated that Plaintiff needed immediate hospitalization." (Amend. Compl., Doc. 71 ¶ 7.) However, "Plaintiff was not sent to the outside hospital facility at this time by Defendants Murphy

3

and Hamblin." (*Id.*) Later that evening, "Plaintiff was having severe chest pain and was seen in the health care department by Nurses, Defendant Hamblin and Murphy for approximately 15 minutes in time duration." (*Id.* ¶ 8.) Plaintiff alleges that

> Hamblin and Murphy called another facility where they spoke to a doctor who advised them to give Plaintiff 'nitroglycerin" [and] wait five minutes. This did not cure the problem and the Nurses were instructed by a medical doctor to send Plaintiff to an outside hospital for immediate medical treatment.
>
> Defendant, Nurse Hamblin, contacted Doctor Edelman, who instructed her to give Plaintiff medication to relieve the chest pressure. When this did not relieve the chest pressure, Dr. Edelman advised Hamblin to send Plaintiff to the Allegiance Emergency Room.
>
> Defendant, Nurse Murphy, told Plaintiff that he was not going to the hospital when he first arrived at health care complaining about loosing [sic] consciousness. She ordered him to go back to his housing unit, with a heart beat rate of 165 beats per minute, and he would be seen the following day by a doctor.
>
> Defendants, Nurses Murphy and Hamblin, during the second visit by Plaintiff, would not do the correct paperwork for Plaintiff to be taken to the hospital and delayed this hospital trip for over an hour to get to the hospital from 9:20 P.M. until he arrived at 10:32 p.m.
>
> Plaintiff arrived at the facility's control center to be taken out to the hospital. At 21:00 p.m. both Nurses Hamblin and Murphy walked passed [sic] him waiting. They had instructed the control center officers that there was no hurry in getting Plaintiff to the outside hospital.
>
> Plaintiff arrived at the Emergency Room at approximately 10:32 p.m. and because Defendants Hamblin and Murphy had not forwarded the proper papers, the ER had no idea of why Plaintiff was there. After over one hour Plaintiff was finally seen by the emergency doctor for his initial chest pain complaint at 9:20 p.m.

(*Id.* ¶¶ 9-14.) Plaintiff avers that he was "diagnosed at the emergency room as having heart palpitations" but the "cause of the chest pain" remained unknown at the time of his release at 2:52 a.m. (*Id.* ¶ 15.) Plaintiff adds that although his release came with "instructions to arrange for follow up care at the facility[,]" that "never occurred." (*Id.*) Plaintiff further avers that on September 23,

4

2009, Plaintiff was again sent to an outside hospital "for his heart condition rate which was 117 beats per minute" and that he "learned that [he] had suffered a heart attack a week previously." (*Id.* ¶ 16.) Plaintiff adds that "[n]o follow up care was ever provided" at the "Cotton Facility" other than he was "given a bottle of 'Nitro' to carry on his person." (*Id.*)

Plaintiff avers that after being transferred to the Lakeland Correctional Facility on April 12, 2010, he continued to experience medical problems and to complain about them to staff. (*Id.* ¶ 17.) On May 10, 2010, Plaintiff was seen by Defendant Dr. Ingraham who Plaintiff avers did not inquire about his heart issues and who "discontinued several medications without reviewing Plaintiff's files" and "diagnosed Plaintiff as having 'abdominal hernia'" which Plaintiff contends is a "medical falsity." (*Id.* ¶ 18.) Plaintiff further alleges that

> [o]n July 28, 2010, Plaintiff was called to health care and was seen by Doctor Syed Sohail. At this meeting, Plaintiff was informed that Doctor Squier's letter indicated to seek alternate treatment for Plaintiff and how to do the least treatment as possible, such as, despising [sic] certain medications already prescribed for his medical ailments, rather than conduct tests for the bleeding in his stomach, which to date has worsened. (RUO Robb unit Officer can verify observation of the Plaintiff's bleeding).
>
> Defendant, Dr. Squier, has never provided, or approved any treatment for Plaintiff's heart condition which was noted by both Allegiance Hospital, and Dwayne L. Waters, where a doctor indicated he had a heart attack one week previously. (The DLW medical records are within the MDOC's medical record department and will be made available for review).
>
> Doctor Squier has not inquired into facts necessary to make a sound medical judgment regarding treatment for Plaintiff, although she noted in Plaintiff's medical files that some improper information was listed, causing incorrect information to be relied upon by reviewing doctors, regarding the heart attack on September 18, 2009, which has yet to be addressed, treated, or evaluated by a qualified heart specialist.

(*Id.* ¶¶ 19-21.) Plaintiff attached an affidavit in support of his Amended Complaint which parallels the averments. (*Id.* at 11-12.)

5

Plaintiff contends that the actions reported in the above recitation constitute: (1) deliberate indifference to serious medical needs (Defendant Murphy); (2) conspiracy to deprive Plaintiff of his constitutional right to receive medical treatment under 42 U.S.C. §§ 1983 and 1985 (Defendant Murphy); (3) a delay in treatment (Defendant Murphy); (4) deliberate indifference (Defendant Hamblin); (5) conspiracy to deprive Plaintiff of his constitutional right to receive adequate medical treatment when she conspired with Defendant Murphy to delay the process to send Plaintiff to an outside hospital under 42 U.S.C. §§ 1983 and 1985 (Defendant Hamblin); (6) deliberate indifference to Plaintiff's medical needs when he discontinued his medication without an inquiry (Defendant Ingraham); (7) mis-diagnosis which caused and unwarranted medical ailment which worsened his already existing medical problems (Defendant Ingraham); (8) failure to treat Plaintiff's heart condition in violation of 42 U.S.C. § 1983 (Defendant Ingraham); (9) deliberate indifference to serious medical needs when she failed to treat Plaintiff's stomach bleeding and failed to properly diagnose him (Defendant Squier); (10) criminal recklessness and conspiracy for failing to treat Plaintiff's stomach bleeding in violation of 42 U.S.C. §§ 1983 and 1985 (Defendant Squier). (*Id*. at 6-8.) Plaintiff seeks monetary and punitive damages "in an amount exceeding Ten Thousand Dollars[.]" (*Id*. at 10.)

Plaintiff's claims may be summarized as claims for deliberate indifference to serious medical needs in violation of the Eighth Amendment and conspiracy to so violate his rights under 42 U.S.C. §§ 1983 and 1985.

### D. Analysis and Conclusions

Plaintiff's claims are brought under the Eighth Amendment's provision that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend VIII. This amendment requires that convicted prisoners be provided "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). However, liability exists "only if [the defendant] knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847.

In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the staff, the inmate has failed to state a claim under the Eighth Amendment. *See Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); *McFarland v. Austin*, 196 Fed. App'x 410, 411 (6th Cir. 2006) ("as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs.*, 94 Fed. App'x 262 (6th Cir. 2004) (where the essence of the plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment, dismissal of complaint for failure to state a claim was affirmed); *Selby v. Martin*, 84 Fed. App'x 496, 499 (6th Cir. 2003) ("[T]he record reveals that [plaintiff] not only received a medical evaluation by a nurse and a

7

physician, he also received instructions with regard to daily care of his abrasions. Thus, the record clearly reveals a competent and conscientious course of medical treatment, and [plaintiff's] dissatisfaction with his treatment does not state a claim under the Eighth Amendment").

As to the remaining Defendants, Nurses Murphy and Hamblin, Plaintiff's allegations show only that they called doctors and followed the instructions given to them by the doctors regarding giving Plaintiff prescription medication, monitoring him, and sending him to the hospital. (Doc. 71 ¶ 8.) During that time, Plaintiff alleges that Defendants Murphy and Hamblin failed to complete the paperwork promptly such that his transport to the emergency room was delayed by one hour and that his treatment while in the emergency room was also delayed by one hour. (*Id.* ¶¶ 9-14.) As Plaintiff averred, however, at the end of his treatment in the emergency room he was "diagnosed . . . as having heart palpitations" but the "cause of the chest pain" remained unknown at the time of his release at 2:52 a.m. (*Id.* ¶ 15.) According to Plaintiff's own allegations, any delay in arriving at or being seen in the emergency room was of no consequence because Plaintiff was released without having any treatment done. Therefore, any delay was not even alleged to be harmful to Plaintiff. Although Plaintiff avers that he was later told that he suffered a heart attack during the time he was seen at the emergency room (*id.* ¶ 16), this result (presumed to be truthful for purposes of this motion) allegedly took place in the emergency room, a place neither occupied nor controlled by Defendants Murphy and Hamblin. Since Plaintiff has not and cannot allege "an affirmative link between the injury and the conduct of" Defendants Murphy or Hamblin, I suggest that he has failed to state a claim against either of them. *Rizzo, supra.*

Moreover, I suggest that, based upon the applicable law, Plaintiff's averments fail to state a claim for any constitutional violation as they allege not a deliberate failure to treat, but only his

8

disagreement with the way he was treated; thus, at most, negligence or malpractice. *See Estate of Henson v. Krajca*, 440 Fed. App'x 341, 346-47 (5th Cir. 2011) ("Nurse Krajca's failure to order Henson's transport to the hospital immediately after receiving notice of his elevated vital signs is in the category of malpractice, not deliberate indifference"); *Rosenblum v. Akanne*, No. 2:07-cv-01176-PMP-GWF, 2009 WL 63771, at *4 (E.D. Ca. Jan. 8, 2009) (dismissing complaint for failure to state a claim under the Eighth Amendment where the plaintiff alleged that the defendants failed to test, diagnose, and send him to a cardiac specialist despite his heart palpitations, increased heart rate, irregular beats, and claim that chest pain caused irreparable damage to his heart where plaintiff was examined by defendants on several occasions in an attempt to treat his medical condition).

### E.     Conclusion

For the reasons stated above, I suggest that the amended complaint (Doc. 71) should be *sua sponte* dismissed.

### III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

9

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97.

                                          s/ *Charles E Binder*
                                          CHARLES E. BINDER
Dated: October 2, 2012                 United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System and served on the following non-ECF participant via the United States Postal Service: Brian Courtney #444293, Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036.

Date: October 2, 2012       By    s/Patricia T. Morris
                                                    Law Clerk to Magistrate Judge Binder